VALLEY HOUSING AND DEVELOPMENT CORPORATION, a Colorado corporation; and Ridges Development Corporation, a Colorado corporation, Plaintiffs–Appellants,

v.

RIDGES METROPOLITAN DISTRICT, Defendant–Appellee.

No. 85CA1736.

Colorado Court of Appeals, Div. III.

Feb. 4, 1988.

Rehearing Denied March 3, 1988.

Dufford, Waldeck, Ruland & Milburn, Edwin G. Ruland, Grand Junction, for plaintiffs-appellants.

Robert J. Flynn, Englewood, James J. Carter, Grand Junction, for defendant-appellee.

TURSI, Judge.

Plaintiffs, Valley Housing & Development Corporation and Ridges Development

Corporation, (Ridges) appeal a declaratory judgment entered in favor of Ridges Metropolitan District (District) determining that availability of service or facility charges (standby fees) charged to it by the District for undeveloped lots were in compliance with the applicable statutes. We affirm.

The District, a metropolitan district organized and authorized pursuant to § 32-1-101, et seq., C.R.S. (1987 Cum. Supp.), issued general obligation bonds to pay for facilities constructed for the distribution of treated water and irrigated water, and for the collection of sewage. The District imposed standby fees against 134 undeveloped lots owned by Ridges, of which 115 lots were platted for single family residences, 12 lots were platted for duplexes, 5 lots were platted for multi-family dwellings, and 2 for community service facilities.

Using a formula that is not challenged on appeal, the District levied a $32 standby fee on each lot upon which a single family residence could be constructed, doubled the fee on the 12 lots zoned for duplex construction, and quadrupled the charge on lots zoned for multi-family and community service lots.

One of the pertinent statutes is § 32-1-1001(1), C.R.S. (1987 Cum.Supp.), which states:

For and on behalf of the special district the board has the following powers: ....

"(n) To have and exercise all rights and powers necessary or incidental to or implied from the specific powers granted to special districts by this article. Such specific powers shall not be considered as a limitation upon any power necessary or appropriate to carry out the purposes and intent of this article."

The other applicable statute is § 32-1-1006(1), C.R.S. (1987 Cum.Supp.), which provides:

In addition to the powers specified in Section 32-1-1001, the board ... has the following powers...."

....

"(b)(I) To divide such district into areas according to the water or sanitation ser-

vices furnished or to be furnished therein. The board has the power to fix different rates, fees, tolls, or charges and different rates of levy for tax purposes against all of the taxable property within the several areas of such district according to the services and facilities furnished or to be furnished therein within a reasonable time...."

....

"(h)(I) To assess availability of service or facilities charges subject to the following provisions: ...."

"(D) Availability of service or facilities charges shall be assessed only where water, sewer, or both water and sewer lines are installed and ready for connection within one hundred feet of any property line of the residential lot or residential lot equivalent to be assessed, but to one or both of which line or lines the particular lot or lot equivalent to be assessed is not connected.

"(E) Availability of service or facilities charges shall be a percentage, not to exceed fifty percent, of the fees, rates, tolls, or charges for use of services or facilities of such district.... If the fees ... for the use of services or facilities vary dependent upon quantities of usage, the availability of service or facilities charges shall be a percentage, not to exceed fifty percent, of the average usage...." (emphasis supplied)

The issue is whether the District was empowered by the general grant of authority set out in § 32-1-1001(1)(n) to interpret "residential lot equivalent" as used in § 32-1-1006(1)(h)(I)(D) in a manner to reflect authorized density according to the recorded plat.

Citing *Wasson v. Hogenson*, 196 Colo. 183, 583 P.2d 914 (1978), Ridges argues that the standby fees are in the nature of a special assessment. Since it is agreed that the phrase "residental lot equivalent" is not defined in the statutes, it contends that any doubt concerning the legislative intent must be construed most strongly against the government and in favor of the taxpayer. From that basis it concludes that "residential lot equivalent" refers to any subdivided lot upon which some structure other

than a residence may be constructed, and the phrase cannot be construed to encompass the theoretical number of units which may be erected upon an existing lot.

The District argues, however, that § 32–1–1006(1)(h)(I) is not a taxing statute; that the action by the District conforms to the Colorado statutes; that the statutory right to assess such fees, by implication, creates the power to impose them based upon the size of the connection; and, that the amount of use and the type of property to be served is a reasonable component to be used in calculating the fee to be imposed. It urges that the right to base charges upon the lot use and density as zoned is included within the authority, power, and intent of § 32–1–1001(1)(n).

We assume, without deciding, that the standby fee, though not a tax in the strictest sense of the term, is sufficiently similar to a special assessment, that the applicable standard for review of the propriety of the fee is one of strict construction in favor of the taxpayer. *See Rancho Colorado, Inc. v. Broomfield,* 196 Colo. 444, 586 P.2d 659 (1978); *Wasson v. Hogenson, supra.* However, such a treatment is not dispositive of the issue before us.

We find guidance in *Senior Corp. v. Board of Assessment Appeals,* 702 P.2d 732 (Colo.1985). In that case, Senior Corporation challenged a district court's judgment affirming a decision of the Board of Assessment Appeals which approved a tax levied by the Denver Southeast Suburban Water & Sanitation District on real property owned by Senior. Senior Corporation protested the district's levy pursuant to § 32–1–1006(1)(b) which divided the district into areas according to water and sanitation services furnished or to be furnished, and discontinued uniform mill levy within the district. The supreme court held that the Colorado constitution does not limit the General Assembly from delegating authority to local governmental units to classify property. In sum, it held that disparate tax levies were authorized and that the statute, as applied and on its face, did not contravene the uniform taxation provisions.

In response to Senior's argument that the District had no authority under § 32–1–1006(1)(b) to classify property for assessment purposes, the supreme court held that in construing different statutory provisions addressing the same topic, it must make every effort to give full effect to the legislative purposes of all such provisions, and that adoption of Senior's argument would, in effect, nullify the provisions of Title 32 granting authority to special districts to classify property, a result contrary to the express language of § 32–1–1006.

Although *Senior* did not deal with standby fees, the exercise of powers therein is substantially similar to the power exercised here. The district's definition of "residential lot equivalent" is a reasonable one. *See Ames v. People ex rel. Temple,* 26 Colo. 83, 56 P. 656 (1899). Therefore, we conclude that the district acted within its statutory authority in classifying the property for purposes of assessing standby fees in accordance to the type and extent of services to be furnished to the particular parcels of property.

Judgment affirmed.

BABCOCK and CRISWELL, JJ., concur.